IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| KARL J. STURM, JR., et al., ) | |
| ) | |
| Plaintiffs, ) | CIVIL ACTION |
| ) | |
| v. ) | No. 22-1188-KHV |
| ) | |
| JAMES S. CUDE, et al., ) | |
| ) | |
| Defendants. ) | |
| ) | |

## MEMORANDUM AND ORDER

Karl Sturm, Jr., son of decedent Karl R. Sturm, Sr., and Matthew S. Anderson, personal representative of the Estate of Karl R. Sturm, Sr., filed suit against Greenwood County, Kansas and James Cude, individually and in his official capacity as a law enforcement officer with the Greenwood County Sheriff's Department, alleging wrongful death and negligence. This matter is before the Court on Defendant James Cude's Motion For Summary Judgment And Memorandum In Support (Doc. #87) filed October 27, 2023. For reasons stated below, the Court overrules defendant's motion.

## Summary Judgment Standard

Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56(c); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986); Hill v. Allstate Ins. Co., 479 F.3d 735, 740 (10th Cir. 2007). A factual dispute is "material" only if it "might affect the outcome of the suit under the governing law." Liberty Lobby, 477 U.S. at 248. A "genuine" factual dispute requires more than a mere scintilla of evidence in support of a party's position. Id. at 252.

The moving party bears the initial burden of showing the absence of any genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); Nahno-Lopez v. Houser, 625 F.3d 1279, 1283 (10th Cir. 2010). Once the moving party meets this burden, the burden shifts to the nonmoving party to demonstrate that genuine issues remain for trial as to those dispositive matters for which the nonmoving party carries the burden of proof. Applied Genetics Int'l, Inc. v. First Affiliated Sec., Inc., 912 F.2d 1238, 1241 (10th Cir. 1990); see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586–87 (1986). To carry this burden, the nonmoving party may not rest on the pleadings but must instead set forth specific facts supported by competent evidence. Nahno-Lopez, 625 F.3d at 1283.

In applying these standards, the Court views the factual record in the light most favorable to the party opposing the motion for summary judgment. Dewitt v. Sw. Bell Tel. Co., 845 F.3d 1299, 1306 (10th Cir. 2018). The Court may grant summary judgment if the nonmoving party's evidence is merely colorable or not significantly probative. Liberty Lobby, 477 U.S. at 250–51. Essentially, the inquiry is "whether the evidence presents a sufficient disagreement to require submission to the jury or whether it is so one-sided that one party must prevail as a matter of law." Id. at 251–52.

**Factual Background**

The following facts are undisputed or, where disputed, viewed in the light most favorable to plaintiffs, the non-movants.

On September 16, 2021, Karl R. Sturm, Sr. ("Sturm") died following a collision on U.S. Route 400 Highway ("U.S. 400") with a Greenwood County Sherriff's Department patrol car driven by James Cude. From March 15, 2019 to February 1, 2023, Greenwood County employed defendant as a Deputy Officer.

On the date of the accident at approximately 1:25 P.M., defendant was working a patrol shift in Fall River, Kansas. He overheard a radio broadcast regarding an accident involving a semi-truck and another car at T Road and U.S. 400. Dispatch requested that all available deputies respond to the accident. Defendant was the closest available deputy, and he responded by getting into his patrol car, activating the emergency lights and driving northward on DD25 Road to head westbound on U.S. 400 toward the scene of the accident.

A stop sign controls the intersection of DD25 Road and U.S. 400, requiring drivers on DD25 Road to stop before entering onto U.S. 400.[1] As defendant approached the intersection to turn left onto U.S. 400, his patrol lights were activated and he slowed down, but he did not come to a complete stop to check for traffic on U.S. 400. At his deposition, defendant testified that he "lean[ed] back" to see past the pillars that hold the windshield in his patrol car and did a "complete scan looking frontwards, backwards and side to side" to make sure that the intersection was clear of obstructions before merging.[2] Deposition Of James S. Cude (Doc. #87-2) at 57:19–24. Defendant testified that he saw a car approaching the intersection on his left side, but that he did not see Sturm, who was also traveling eastbound on U.S. 400 on his motorcycle.

Sturm's motorcycle struck the driver's side rear panel of defendant's patrol car, causing defendant's car to spin 180 degrees and come to a rest in a ditch north of the westbound lane of U.S. 400. Immediately after the collision, defendant called dispatch, requested medical and fire support and stated that he had just been involved in a collision. Sturm died from blunt force

---

[1]     Drivers on U.S. 400 do not have a stop sign at the intersection with DD25 Road.

[2]     Defendant testified that he specifically checked for road debris, animals, vehicles, pedestrian traffic and other hazards that might obstruct the roadway. Cude Deposition (Doc. #87-2) at 70:22–71:9.

injuries.

The toxicology report on Sturm did not reveal any positive findings. The Kansas Highway Patrol collected data from the airbag control module on the police car, which showed that five seconds before the collision, defendant was traveling at 39.4 miles per hour. He was traveling at 24.9 miles per hour at 2.4 seconds before the collision, and 30.1 miles per hour at the time of the collision. In other words, he was accelerating onto U.S. 400.

Scott Zadorozny, a motorist who was traveling eastbound on U.S. 400 behind Sturm, saw the flashing lights on the patrol car as defendant entered the intersection. Zadorozny slowed down and pulled to the side of the road to yield to defendant. Zadorozny did not see brake lights on Sturm's motorcycle illuminate, or see any skid marks, smoke, debris or changes in speed or direction from Sturm's motorcycle. Zadorozny did not hear a siren, either before or after the collision.[3]

On August 22, 2022, plaintiffs filed this suit against Greenwood County and Cude, individually and in his official capacity as Deputy Officer. Complaint (Doc. #1). On October 27, 2023, the parties stipulated to dismiss plaintiffs' claims against Greenwood County and Cude in his official capacity. Stipulation Of Partial Dismissal (Doc. #88). As set forth in the Pretrial Order

---

[3] Defendant submits the declaration of Heath Samuels, the current Sheriff of Greenwood County, that defendant's patrol car has an automatic switch that turns off the car's emergency siren when the car shifts into park. See Defendant's Motion For Summary Judgment (Doc. #87), ¶ 24; Declaration Of Sheriff Heath Samuels (Doc. #87-6). Defendant presumably offers this evidence to show that Zadorozny could not have heard defendant's sirens immediately after the crash because defendant had shifted his vehicle into park, thus automatically turning off the sirens. Without making this direct argument or otherwise stating that defendant's vehicle was in park by the point Zadorozny got out of his own car, the Court cannot reach any conclusions based on this evidence. Regardless, the Court overrules plaintiffs' objection that the declaration is inadmissible because plaintiffs provide no grounds for their objection.

(Doc. #92) filed December 6, 2023 at 7, the remaining claims in this case are claims for wrongful death (Count I) and negligence (Count II) against Cude in his personal capacity. On October 27, 2023, defendant filed a motion for summary judgment on both claims. Defendant argues that as a matter of law, plaintiffs have not demonstrated a genuine issue of material fact whether he breached his duty of care to Sturm.

## Analysis

Plaintiffs allege that defendant was negligent per se under K.S.A. § 8-1506, which requires the driver of an authorized emergency vehicle "to drive with due regard for the safety of all persons."[4] K.S.A. § 8-1506(d). Section 8-1506(c) permits drivers of authorized emergency vehicles to disregard various traffic laws and regulations if the driver employs a siren and emergency lights. Plaintiffs argue that defendant breached his duty under K.S.A. § 8-1506(d) because he (1) did not activate his siren when he merged onto U.S. 400, as K.S.A. § 8-1506(c) requires; and (2) did not "slow down as necessary for safe operation" of his patrol car, as K.S.A. § 8-1506(b)(2) requires. See Pretrial Order (Doc. #92) at 5.

Defendant seeks summary judgment, arguing that plaintiffs have not demonstrated a genuine issue of material fact whether he breached his duty of care under K.S.A. § 8-1506.

Negligence is "the lack of ordinary care or more specifically, the failure of a person to do something that a reasonably careful person would do, or the act of a person in doing something that a reasonably careful person would not do, measured by all the circumstances then existing." Elstun v. Spangles, Inc., 289 Kan. 754, 756, 217 P.3d 450, 453 (2009) (quotation and citation omitted). To establish negligence under Kansas law, plaintiffs must prove that (1) defendant owed

---

[4] The statute defines "authorized emergency vehicle" as "police vehicles which are publicly owned." K.S.A. § 8-1404.

a duty to Sturm, (2) defendant breached that duty, (3) defendant's breach of duty caused the injury to Sturm and (4) Sturm suffered damages. Shirley v. Glass, 297 Kan. 888, 894, 308 P.3d 1, 6 (2013); see also Robbins v. City of Wichita, 285 Kan. 455, 455, 172 P.3d 1187, 1189 (2007) (listing same requirements to establish claim for wrongful death). Defendant's motion is limited to breach and the Court only analyzes this element of plaintiffs' negligence claim.

The doctrine of negligence per se is one method by which a party can establish breach of duty. OMI Holdings, Inc. v. Howell, 260 Kan. 305, 339, 918 P.2d 1274, 1296 (1996). The elements of negligence per se are (1) a violation of a statute, ordinance or regulation, and (2) damages resulting therefrom. Pullen v. West, 278 Kan. 183, 194, 92 P.3d 584, 593 (2004). In addition, plaintiffs must establish that the legislature intended an individual right of action for injury arising out of the violation. Id. While plaintiffs have not specifically established that the Kansas legislature intended to create an individual right of action for injuries arising out of violations of K.S.A. § 8-1506, Kansas law supports a private right of action under the statute. See Montgomery v. Saleh, 311 Kan. 649, 655, 466 P.3d 902, 908 (2020) (plain language of K.S.A. § 8-1506 imposes specific duty on emergency vehicle drivers to "drive with due regard for the safety of all persons"). Whether a duty exists is a question of law, but whether the duty has been breached is a question of fact. Id. at 655–56 (citation omitted).

The standard of care for drivers of emergency vehicles is "to drive with due regard for the safety of all persons." K.S.A. § 8-1506(d).[5] For the driver of an emergency vehicle to exercise

---

[5] In a case involving police officer pursuit of a fleeing suspect, the Kansas Supreme Court interpreted K.S.A. § 8-1506 to establish "reckless disregard" as the standard of care for whether the officer breached the duty to "drive with due regard for the safety of all persons." Robbins, 285 Kan. at 467, 172 P.3d at 1196 (reckless disregard means "driving a vehicle under circumstances that show a realization of the imminence of danger to another person or the property

(continued. . .)

the privileges set forth in K.S.A. § 8-1506, including the authority to "[p]roceed past a red or stop signal or stop sign, but only after slowing down as may be necessary for safe operation," the emergency vehicle must "mak[e] use of an audible signal meeting the requirements of K.S.A. 8-1738."[6]  K.S.A. § 8-1506(b)(2), (c).  The Kansas Supreme Court has held that the privileges granted to drivers of emergency vehicles are not "carte blanche" and that requiring drivers use audible signals serves a two-fold purpose: "(1) they give a safety warning to other users of the

---

[5](. . .continued)
of another where there is a conscious and unjustifiable disregard of that danger."); see also Montgomery, 311 Kan. at 656, 466 P.3d at 909 (reckless disregard standard applies to officer's decision to initiate and/or continue pursuit of fleeing suspect and "officer's manner of operating his or her vehicle during the pursuit").

Although this case does not involve pursuit of a fleeing suspect, defendant argues that the reckless disregard standard applies because (1) K.S.A. § 8-1506 does not limit what constitutes an "emergency call" and his conduct while responding to a dispatch call falls within the Kansas Supreme Court's prior interpretation of K.S.A. § 8-1506 and (2) plaintiffs have presented no authority to support the proposition that the legislature intended to hold law enforcement to a different standard when pursuing a fleeing suspect than when responding to an emergency dispatch call.  Defendant's Reply In Support Of Motion For Summary Judgment (Doc. #91) at 10–11.

Whether the reckless disregard standard applies to other emergency situations appears to be a matter of first impression.  Because the Court decides defendant's motion on other grounds, it does not need to answer whether K.S.A. § 8-1506 establishes a reckless disregard standard in non-pursuit situations.

[6]      K.S.A. § 8-1738 sets forth the following requirements for audible signals on emergency vehicles:

> Every authorized emergency vehicle shall be equipped with a siren, whistle or bell, capable of emitting sound audible under normal conditions from a distance of not less than 500 feet and of a type approved by the secretary of transportation, but such siren shall not be used except when such vehicle is operated in response to an emergency call or in the immediate pursuit of an actual or suspected violator of the law, in which said latter events the driver of such vehicle shall sound said siren when reasonably necessary to warn pedestrians and other drivers of the approach thereof.

K.S.A. § 8-1738(d).

roadway; and (2) they assist in clearing a path for the emergency vehicle to travel." Thornton v. Shore, 233 Kan. 737, 743, 666 P.2d 655, 660 (1983), overruled on other grounds by Robbins, 285 Kan. 455, 172 P.3d 1187.

The parties do not dispute that defendant went through the stop sign without coming to a complete stop at the intersection of U.S. 400 and DD25 Road before he tried to turn left onto U.S. 400. Under Kansas law, defendant's authority to merely slow down, rather than coming to a full stop, depends on whether he activated his siren. Therefore, the Court first considers this question.

Defendant claims that after he got into his patrol car to respond to the dispatch call, and before he attempted to merge onto U.S. 400, he activated his siren. Defendant's Motion For Summary Judgment (Doc. #87), ¶ 6.[7] Plaintiffs deny that defendant activated his siren and cite Zadorozny's testimony that he did not hear the sound of the siren before or after the collision. Zadorozny Deposition (Doc. #90-1) at 29:22–30:11. Zadorozny stated that because his windows were up at the time of the collision, he might not have heard the siren; he also testified more than once that he did not hear the siren. Id. at 30:4–7.

On this record, plaintiffs have demonstrated genuine issues of material fact whether defendant engaged his siren before going through the stop sign without coming to a complete stop and whether he slowed down as necessary for safe operation of his patrol car. Because K.S.A. § 8-1506 expressly permits drivers of emergency vehicles to go through stop signs on the condition

---

[7] Defendant cites his deposition testimony that he "activated [his] lights and sirens and proceeded north on the road towards the accident scene to that accident scene." Cude Deposition (Doc. #87-2) at 46:2–4; see also id. at 46:5–7, 49:7–10 (repeated testimony that he activated siren). To support his assertion that he activated his siren, defendant also cites stipulated fact (iv) in the Pretrial Order (Doc. #92), ¶ 2.a.iv. Defendant's Motion For Summary Judgment (Doc. #87) at 10. The Court presumes that defendant means to refer to stipulated fact (iii), which states that defendant activated the emergency lights on his patrol car. Pretrial Order (Doc. #92), ¶ 2.a.iii. The pretrial order contains no stipulation that he activated his siren.

that they make use of audible signals, a reasonable jury could conclude that defendant breached his duty to "drive with due regard for the safety of all persons" when he did not stop at the stop sign.  See K.S.A. § 8-1506(d).  The Court therefore overrules defendant's motion for summary judgment.

**IT IS THEREFORE ORDERED** that Defendant James Cude's Motion For Summary Judgment And Memorandum In Support (Doc. #87) filed October 27, 2023 is **OVERRULED**.

Dated this 13th day of December, 2023 at Kansas City, Kansas.

s/ Kathryn H. Vratil
KATHRYN H. VRATIL
United States District Judge